1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE WESTERN DISTRICT OF NEW YORK

3                 ROCHESTER DIVISION

4    ----------------------------------

5    THE UNITED STATES OF AMERICA,

6

7    -versus-                    DOCKET NO: 17-CR-6074

8

9    CARL L. BURDICK,

10                     Defendant.

11   ----------------------------------

12              TRANSCRIPT OF PLEA HEARING

13        BEFORE THE HONORABLE CHARLES J. SIRAGUSA

14             UNITED STATES DISTRICT JUDGE

15               TUESDAY, MAY 16, 2017

16

     A p p e a r a n c e s:
17
     On Behalf of the Government:
18
          Kyle Rossi, Assistant US Attorney
19
     On Behalf of the Defendant:
20
          Robert Smith, Esq.
21
     Defendant present
22

23

24   R e p o r t e d  B y:

25        Briana L. Jeffords

1          (Whereupon, the proceeding commenced at 12:02 p.m.)

2          THE COURT:  For the record, this is the matter of

3 the *United States versus Carl Burdick*.  Come on up,

4 Mr. Burdick.  Good afternoon.

12:13:14PM 5          THE DEFENDANT:  Good afternoon.

6          THE COURT:  For the record, you are Carl Burdick?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Mr. Burdick, you are appearing with

9 your attorney Mr. Smith; is that correct?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  The Court notes the presence of

12 Mr. Rossi on behalf of the Government.  Mr. Burdick, I have

13 been provided a copy of the written plea agreement.  It is my

14 understanding that pursuant to the terms and conditions

12:13:31PM 15 contained in this agreement, it would be your intent to waive

16 indictment and plead guilty to a one-count information

17 charging you with transportation of a minor in commerce with

18 intent to engage in criminal sexual activity; is that correct?

19          THE DEFENDANT:  That is correct.

12:13:49PM 20          THE COURT:  Here is what we are going to do then,

21 Mr. Burdick, I'm going to ask you some questions.  The purpose

22 of the questions is to make sure the record, that is what our

23 court reporter is taking down, is clear that you know what you

24 are doing and this is what you want.  Do you understand that?

12:14:01PM 25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Therefore, Mr. Burdick, at any time I'm

2     asking you questions you have any for me, I want you to feel

3     free to stop me, ask me your question, and I will do my best

4     to answer it.  Okay?

12:14:13PM 5          THE DEFENDANT:  Okay.

6          THE COURT:  The first thing I want you to do is

7     raise your right hand.

8               C-A-R-L  B-U-R-D-I-C-K,

9               called herein as a witness, was examined

12:14:18PM 10               under oath and testified as follows:

11          THE COURT:  Put your hand down.  What you have

12     done, Mr. Burdick, as I'm sure you are aware of, is taken an

13     oath to tell me the truth.  I assume you are going to tell me

14     the truth.  But if you lie to me, that is if you lie in

12:14:31PM 15     response to any question I ask, that would be another crime

16     called perjury which you can be prosecuted and imprisoned.  Do

17     you understand?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Mr. Burdick, can you tell me how old

12:14:40PM 20     you are now?

21          THE DEFENDANT:  Fifty-eight.

22          THE COURT:  Fifty-eight years old.  How far have

23     you gone in school?

24          THE DEFENDANT:  GED and a little bit of college.

12:14:47PM 25          THE COURT:  So obviously then you can read, write,

1  and understand English; is that correct?

2  THE DEFENDANT:  Yes, sir.

3  THE COURT:  Mr. Burdick, are you currently under

4  the care of a medical doctor for any kind of physical issues?

12:14:57PM 5  THE DEFENDANT:  No, sir.

6  THE COURT:  Have you ever been treated, or

7  hospitalized, or confined for any type of emotional or mental

8  disorders?

9  THE DEFENDANT:  No, sir.

12:15:05PM 10  THE COURT:  Are you addicted to alcohol?

11  THE DEFENDANT:  No, sir.

12  THE COURT:  Are you addicted to drugs?

13  THE DEFENDANT:  No, sir.

14  THE COURT:  How long have you been in Jefferson

12:15:11PM 15  County Jail?

16  THE DEFENDANT:  About four months now.

17  THE COURT:  During that time, have you had any

18  alcohol or drugs?

19  THE DEFENDANT:  No, sir.

12:15:17PM 20  THE COURT:  Regarding your decision to plead guilty

21  under the terms and conditions of this plea agreement, Mr.

22  Burdick, have you discussed with Mr. Smith the Government's

23  case against you?  By that, I mean the proof that the

24  Government has that you did commit this crime.  Have you done

12:15:31PM 25  that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Have you also discussed with Mr. Smith

3  what the result might be if you went to trial?  In other

4  words, whether you would be found guilty or not guilty?

12:15:40PM 5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Based on your conversations with Mr.

7  Smith and given, of course, the facts and circumstances, do

8  you believe entering into this pleading agreement and pleading

9  to this charge is what's best for you to do?

12:15:53PM 10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  With respect to the written plea

12  agreement, itself, Mr. Burdick, have you gone over with

13  Mr. Smith all of the terms and conditions?

14          THE DEFENDANT:  Yes, sir.

12:15:58PM 15          THE COURT:  Did you read the agreement yourself?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  To the extent you had questions about

18  the plea agreement, Mr. Burdick, did Mr. Smith answer those

19  questions for you?

12:16:09PM 20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Have you now had sufficient time to

22  confer with him prior to coming to court and pleading guilty?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Mr. Burdick, are you satisfied with

12:16:15PM 25  Mr. Smith's advise and representation, and by that I mean the

1    job he has done for you?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  What I am going to do now then, Mr.

4    Burdick, is go over portions of the plea agreement with you.

12:16:26PM 5  Okay?  I'm not going to go over everything because you just

6    told me you went over everything with Mr. Smith and you read

7    the agreement yourself; is that correct?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  However, as I indicated, if you have

12:16:37PM 10 questions about anything and that includes any part or portion

11   of the plea agreement whether I bring it up or not, stop me,

12   ask your question, and I will do my best to answer it.  Okay?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Now, crimes, as you may be aware, are

12:16:54PM 15 divided into two categories:  Misdemeanors and felonies.

16   Felonies, Mr. Burdick, are the more serious crimes because

17   once convicted of a felony, you could receive more than one

18   year in federal prison.  Do you understand that?

19             THE DEFENDANT:  Yes, sir.

12:17:06PM 20            THE COURT:  And do you understand the crime to

21   which you will be pleading guilty, transportation of a minor

22   in commerce with attempt to engage in criminal sexual

23   activity, is in fact a felony.  Do you understand that?

24             THE DEFENDANT:  Yes, sir.

12:17:20PM 25            THE COURT:  Mr. Burdick, if you will take a look at

1  paragraph one, you will see once you are convicted of this

2  charge, whether it's by pleading guilty or after trial, you

3  must receive a mandatory minimum term of imprisonment of 10

4  years.

12:17:29PM 5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  You could receive a maximum of up to

7  life.  You are looking at a fine of up to $250,000.  You must

8  pay a mandatory $100 special assessment which everyone

9  convicted of a felony must pay.  And you are looking at a term

12:17:45PM 10  of supervised release of not less than five years but

11  potentially up to life.  Do you see that?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  Do you understand those are the maximum

14  penalties you face upon pleading guilty?

12:17:59PM 15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Now, if you will turn over to page two

17  please.  Now, I want to direct your attention to paragraph

18  two.  Now, presumably, you are indigent because you are being

19  represented by the federal public defender.  But if at some

12:18:19PM 20  point it is determined you are not indigent, you have

21  sufficient funds, then in addition -- correct me if I am wrong

22  Mr. Smith -- in addition to the fine of $100 special

23  assessment, you have to pay on top of that another $5,000; is

24  that correct?

25              MR. SMITH:  That's correct.

1           THE COURT:  Do you understand that?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Now again if you are indigent, you

4  don't have to pay that.  But I want you to understand that if

12:18:40PM 5  at some point I find that you are not indigent, then you would

6  be required to pay in addition to the $100 special assessment,

7  an enhanced special assessment of $5,000.  Do you understand

8  that?

9           THE DEFENDANT:  Yes, sir.

12:18:52PM 10          THE COURT:  Now if you would take a look at

11  paragraph three, here is what that means.  It talks about

12  restitution.  If the 15-year-old victim in this case is able

13  to establish for my benefit probable cause to believe as a

14  result of your conduct she sustained injuries, then I would be

12:19:14PM 15  required to order restitution to her.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And if I determine restitution and if I

18  determine an amount and you say well I don't like that, you

19  can't -- that's not a basis to withdraw your plea of guilty.

12:19:32PM 20  Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  So once you plead guilty today, that's

23  it.  Do you understand?

24          THE DEFENDANT:  Yes, sir.

12:19:37PM 25          THE COURT:  Now go down to paragraph four.  Have

1  you discussed with Mr. Smith what supervised release is?

2            THE DEFENDANT:  I think so.

3            THE COURT:  Let me over it with you.  It's kind of

4  probation or parole.  It means this:  That after any prison

12:19:47PM 5  sentence you serve, I will place you on supervised release for

6  a number of years.  Do you understand that?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  While on supervised release, Mr.

9  Burdick, I want you to understand that you have to report to a

12:19:59PM 10  federal probation officer and abide by the conditions that I

11  set and that the probation office of my approval sets.  Do you

12  understand that?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  And lastly, I want you to understand

12:20:11PM 15  something.  If you are on supervised release and it's ever

16  proven to me by a preponderance of evidence that you violated

17  any of those terms and conditions, I can put you back in

18  prison.  Do you understand that?

19            THE DEFENDANT:  Yes, sir.

12:20:21PM 20            THE COURT:  If the violation stems from what I will

21  call a technical violation or a violation pertaining to

22  certain conduct, for example, if I ordered drug testing and

23  you didn't do that, if you committed a DWI, if you didn't

24  notify probation when you changed addresses, then I can put

12:20:43PM 25  you back in prison for up to five years without giving you any

1  credit for the time already done on supervised release.  Do

2  you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  However, if the violation stemmed from

12:20:55PM 5  what I will refer to as a new child exploitation crime, that

6  you did something that amounts to child exploitation under

7  articles as set forth in 109(a) 110, or 117 or Sections 1201

8  or 1591 of Title 18, if you committed another child

9  exploitation -- I will give you an example.  You were found

12:21:23PM 10  guilty or I found you by a preponderance of evidence you

11  possessed child pornography, or if I found by a preponderance

12  of evidence you committed similar conduct to what brings you

13  here today, then I would have to put you back in prison for at

14  least five years and could put you back for the rest of your

12:21:41PM 15  life.  Do you understand that?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Take a look at paragraph five because

18  it talks about the Sex Offender Registration Notification Act.

19  What it requires -- it is a federal law that requires you to

12:21:55PM 20  keep -- once you get out to register and keep your

21  registration current in all of the following jurisdictions:

22  Where you reside, are employed, or if you were to go back to

23  school as a student.  It indicates that you understand there

24  are requirements for registration to provide your name,

12:22:13PM 25  residence, address, names and addresses of any places where

1  you are or will be employed, are a student.  And you further

2  understand as indicated that the requirement is to keep

3  current the registration and that includes informing at least

4  one jurisdiction in which you reside, are employed, or are a

12:22:36PM 5  student, not less than three business days after any change in

6  your name, residence, employment, or student stature.  Do you

7  understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Now, we live in New York.  You will be

12:22:51PM 10  classified.  In order to keep your sex offender in New York,

11  there are registration requirements you are going to have to

12  comply with in New York.  If you don't comply, then you can be

13  prosecuted for a federal crime.  That's what this is all

14  about.  Do you understand that?

12:22:59PM 15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Now lastly, take a look at paragraph

17  six over on page three.  I want to explain to you what this

18  means.  Once you do your sentence, your prison sentence, if

19  the Attorney General's Office believes you are what is

12:23:25PM 20  referred to as a sexually dangerous person pursuant to 18 USC

21  Section 4248, then the Attorney General or the Director of

22  Bureau of Prisons for that matter can seek an order from a

23  judge civilly committing you even though you did your criminal

24  sentence.  Do you understand that?

12:23:58PM 25              THE DEFENDANT:  Yes.

1          THE COURT:  So it means you do your time.  An

2     application is made to find you a sexually dangerous person.

3     And the judge to whom the application is made finds that, then

4     you could be placed in civil confinement.  In other words, you

12:24:13PM 5     would be -- I hesitate to use the word incarcerated, but

6     that's what it is.  You will be hospitalized let's say civilly

7     and not be able to get out.  Do you understand that?

8          THE DEFENDANT:  Yes.  Can I ask you a question?

9          THE COURT:  Of course.

12:24:24PM 10          THE DEFENDANT:  Is that based on your past, or what

11     is all that based on?

12          THE COURT:  You know what, I'm not sure.  But here

13     is what I think.  It could be based on how you do in prison.

14     It could be based on the crime for which you are convicted.

12:24:39PM 15     It could be based on your past as well.  I'm not saying you

16     do, but if you had five prior incidents of sexually acting out

17     -- so there are a number of factors on which it can be based,

18     but that would be a determination to be made once you complete

19     your prison term.  Do you understand that?

12:24:56PM 20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Did I answer your question?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Thank you.  Now if you will turn over

24     please to page four and go down to paragraph nine.  Do you see

12:25:02PM 25     where it says at the end of paragraph nine Sentencing Reform

1 Act of 1984?

2        THE DEFENDANT: Yes, sir.

3        THE COURT: It is probably pretty obvious, but this

4 is in reference to federal law involvement in sentencing. Do

12:25:12PM 5 you understand that?

6        THE DEFENDANT: Yes, sir.

7        THE COURT: The reference, take a look at paragraph

8 nine. That talks about a sentence. Do you see that? Do you

9 see paragraph nine?

12:25:28PM 10        THE DEFENDANT: Okay. Yes, your Honor.

11        THE COURT: It says Sentencing Reform Act of 1984.

12 I just want you to know that's a reference to federal law

13 involved in this action. Do you understand that?

14        THE DEFENDANT: Yes, sir.

15        THE COURT: And do you understand that under

16 federal law when I sentence you, I have to consider a number

17 of factors. One of the factors I have to consider is called

18 the Advisory Sentencing Guidelines. Do you understand that?

19        THE DEFENDANT: Yes, sir.

12:25:46PM 20        THE COURT: Have you discussed these guidelines

21 with Mr. Smith?

22        THE DEFENDANT: Yes, sir.

23        THE COURT: Do you understand then, Mr. Burdick,

24 that under these guidelines as the judge I must determine two

12:25:56PM 25 numbers. One is called your offense level. The other is

called your criminal history category.  Then once I determine

these two numbers, I go to a book and the numbers recommend to

me a range within the guidelines in which you should be

sentenced.  Do you understand these?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you also understand that it is my

obligation as the judge for sentencing that before I sentence

you to review a document which you will be interviewed called

a Presentence Investigation Report.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand this document, among

other things, will tell me a little bit about the crime to

which you plead guilty, the facts and circumstances?

THE DEFENDANT:  Yes.

THE COURT:  Will make recommendations to me as to

what the probation office believes your correct numbers are

under these Advisory Sentencing Guidelines.  You know what,

very importantly will tell me a little bit about who Carl

Burdick is.  For example, you mentioned your education that

you got your GED and then did some college.  It will tell me

about that.  I know from looking at the complaint that you

drove a truck.  It will tell me about your employment history.

It will indicate to me whether you have ever been married or

whether you have any children.  It will give me some insight

into your finances.  It will detail for me your criminal

1    record, if any.  It will tell me a little bit about whether

2    you have any health related issues among other things.  Do you

3    understand that?

4              THE DEFENDANT:  Yes, sir.

12:27:09PM 5              THE COURT:  Do you understand that it is my

6    responsibility as the sentencing judge to carefully review the

7    presentence report and then sentence you to what I believe is

8    just, fair, appropriate, and reasonable under the law.  Do you

9    understand that?

12:27:20PM 10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Now if you take a look -- if you'll

12   stay on page -- actually, go over to page five and go to

13   paragraph 10 because there Mr. Rossi on the Government's

14   behalf and Mr. Smith on your behalf have done what they

12:27:29PM 15  believe are the correct calculations under the advisory

16   guidelines.  You will see in paragraph 10 -- excuse me -- in

17   paragraph 10 that you and the Government agree that your base

18   offense level is 28.  Do you see that?

19             THE DEFENDANT:  Yes, sir.

12:27:42PM 20             THE COURT:  However in paragraph 11, you and the

21   Government agreed that there should be certain increases to

22   that base offense level.  Subparagraph A, a two-level increase

23   because the minor was in your custody, care, or supervisory

24   control.  Another two-level increase in subparagraph B because

12:28:00PM 25  the offense involved undue influence of the minor.  Another

1  two-level increase as set forth in subparagraph B because, to

2  commit the events involved, you used a computer.  And finally,

3  another two-level increase in subparagraph B because the

4  offense involved the actual commission of a sex act.  Do you

12:28:20PM 5  see those?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Now if you take that base offense level

8  of 28 and add the increases which total eight, it becomes the

9  adjusted offense level of 36 as indicated in paragraph 12.  Do

12:28:36PM10  you see that?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  However, Mr. Burdick, in paragraph 13,

13  the Government is agreeing not to impose a recommendation that

14  that 36 be reduced by a total of three for what's called

12:28:45PM15  acceptance and responsibility.  Do you see that?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  However, I need to explain something to

18  you.  You don't get this reduction just by pleading guilty.

19  You have to convince me when I sentence you that you are

12:28:55PM20  remorseful, sorry.  I will give you some examples.  Remember I

21  said you would be interviewed by probation?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  If you told the probation officer that

24  you really didn't do anything wrong, it was set up, it's all

12:29:07PM25  made up, the victim is lying, would that be accepting

1   responsibility?

2           THE DEFENDANT:  No, your Honor.  It wouldn't.

3           THE COURT:  Of course not.  And Mr. Burdick, if you

4   committed new criminal conduct, it would not be consistent

12:29:17PM 5   with accepting responsibility.  And you might say, well, I am

6   in jail, how am I committing criminal conduct.  Well, it

7   happens all the time.  You may have seen that people get drugs

8   smuggled into them.  They get in beef with another inmate and

9   punch them out.  They start harassing the guards.  To engage

12:29:36PM 10  in new criminal conduct would not be consistent with accepting

11  responsibility.  Do you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Does that make sense to you?

14          THE DEFENDANT:  Yes.

12:29:43PM 15          THE COURT:  If you do, in fact, get that reduction

16  for acceptance, as I indicated, your offense level will be 33.

17  Paragraph 14, you and the Government understand that your

18  criminal history category is one.  That's the lowest you can

19  have.  The lowest criminal history category is one.  The

12:29:57PM 20  highest is six.  So one is the lowest.  And in paragraph 15,

21  Mr. Rossi and Mr. Smith have calculated that with an offense

22  level of 33, if you get the reduction for acceptance and a

23  criminal history category of one, the recommended range under

24  the Advisory Sentencing Guidelines is 135 to 168 months.

12:30:21PM 25  135 months is 11 years and 3 months.  168 months is 14 years.

1 The recommended fine range is $35,000 to a quarter of a

2 million.  The recommended period of supervised release is five

3 years up to life.  And of course, you have to pay if you are

4 indigent, $100 special assessment.  If it turns out you are

12:30:38PM 5 not, $100 plus an enhanced $5,000 assessment.  Do you

6 understand that?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Now, I want you to listen carefully to

9 the last sentence in paragraph 15.  It says "notwithstanding

12:30:59PM 10 this, the defendant understands that with the sentencing, the

11 defendant is subject to the mandatory minimum and maximum

12 penalty as set forth in going forward with this agreement."

13 Here is what that means.  It means that when I sentence you, I

14 could give you life in prison.  And if I did, you couldn't

12:31:16PM 15 take your plea back.  Do you understand that?

16            THE DEFENDANT:  I know I can't take it back.

17            THE COURT:  You can't take it back.  In other

18 words, here is what I mean.  You can't go out of here after we

19 take this plea, have second thoughts, and then try to withdraw

12:31:30PM 20 your plea.  If you don't like the sentence I give you, you

21 can't withdraw your plea.  Do you understand that?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  So I will put it to you as directly as

24 I can.  Once you plead guilty today, you can't try to take

12:31:41PM 25 your plea back.  Do you understand that?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Okay.  Now, I want to direct your

3    attention to paragraph 16.  That says that you and the

4    Government agree to the guideline calculations that we just

12:31:59PM 5    went through.  And beyond that, that you are not going to

6    advocate, or ask for, or recommend a sentence outside of the

7    guidelines.  It says except as provided for in this agreement,

8    but there really is no exception.  So you are agreeing not to

9    ask for anything other than what the guideline sentence is and

12:32:20PM10   so is the Government.  Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  In other words, so here is what they

13   have.  Undoubtedly, Mr. Smith is going to come into sentencing

14   and say that you should receive 135 months.  That's the lowest

12:32:31PM15   he can argue for.  Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Mr. Rossi is probably going to come in

18   and argue for the high end of that, 168 months.  Do you

19   understand that?

12:32:38PM20          THE DEFENDANT:  Yes.

21          THE COURT:  It will be up to me then to decide

22   whether you should get a guideline sentence, or whether I

23   should give you more, whether I should give you less.  I can't

24   give you any less than 10 years because that's the mandatory

12:32:56PM25   minimum, but that would be up to me.  Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  But you've got to keep in mind that if

3  you plea, you can get up to life in prison.  Do you understand

4  that?  Do you understand that?

12:33:04PM 5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  Now, I want to direct your

7  attention next if I could to page nine.  Do you see where it

8  says at the top appeal rights, Mr. Burdick?  Take your time.

9          THE DEFENDANT:  Yes, sir.

12:33:17PM 10          THE COURT:  As you may or maybe you're not aware,

11  if you were convicted of this crime after trial, you could

12  appeal your conviction to a higher court.  The court above me

13  is called the Second Circuit Court of Appeal.  You can claim

14  that I did something wrong, Mr. Rossi did something wrong,

12:33:33PM 15  that Mr. Smith did something wrong, or that the jury reached

16  the wrong result.  However, under this portion of the

17  agreement, you are consenting, that is agreeing, to give up

18  your right to appeal or collaterally attack.  Do you have any

19  idea what collaterally attack means?

12:33:53PM 20          THE DEFENDANT:  No, I don't.

21          THE COURT:  Nobody usually does so I will explain

22  it.  If you try to upset your sentence by going to the court

23  above me which is called the Second Circuit Court of Appeal,

24  that's called an appeal.  If you come back to me or another

12:34:02PM 25  judge like me, that is called a collateral attack.  One is

1  going up.  One is coming back.  Makes sense now?

2            THE DEFENDANT:  Yep.

3            THE COURT:  You're agreeing to give up your right

4  to appeal or collaterally attack any sentence that includes a

12:34:15PM 5  term of incarceration of 165 months or less, a fine of a

6  quarter million dollars or less, a period of supervised

7  release of life or less, and $100 special assessment if you

8  are indigent, or if you are not indigent, an enhanced

9  additional $5,000 special assessment.  Do you understand that?

12:34:37PM 10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Now, if you turn over to page 10.  Do

12  you see what it says at the top of page 10?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  What does it say?

12:34:46PM 15            THE DEFENDANT:  Forfeiture of probation.

16            THE COURT:  What does forfeiture mean?

17            THE DEFENDANT:  To give up.

18            THE COURT:  Exactly.  Under this portion of the

19  agreement, you are agreeing that to the extent you have any

12:34:55PM 20  interest in this Samsung Galaxy Core Prime cellular telephone

21  as specified in paragraph 25(a) you are giving up your right.

22  You are essentially saying to the Government do with what you

23  want to the phone.  Do you understand that?

24            THE DEFENDANT:  Yes, sir.

12:35:13PM 25            THE COURT:  Now, go back to page one.  Paragraph

1  one, if you would please, Mr. Burdick, do you see how it

2  starts off it says "the defendant agrees to waive indictment."

3  Do you see that?

4             THE DEFENDANT:  Yes, sir.

12:35:29PM 5             THE COURT:  I need to discuss with you here in

6  court, Mr. Burdick, what it means to waive the indictment.

7  Okay?  Is that all right?

8             THE DEFENDANT:  Yes, sir.

9             THE COURT:  Now you already talked to Mr. Smith

10  about this; is that correct?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Now, I am going to ask you some

13  questions again because I want to make sure the record is

14  clear.  Do you understand?

12:35:41PM 15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Mr. Burdick, do you understand under

17  our law because this is a felony, a serious charge, you have

18  the absolute right to be prosecuted on it by what's called an

19  indictment returned by a grand jury.  Do you understand that?

12:35:50PM 20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Do you understand that a grand jury

22  consists of 23 people from the community?  Here in federal

23  court in the Western District, the community consists of

24  Monroe County and several of the outlining counties.  Do you

25  understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And Mr. Burdick, do you understand that

3     before a grand jury can charge you with this crime, at least

4     12 of those 23 people must find reasonable cause that you

12:36:16PM 5     committed the crime.  Do you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Do you understand, Mr. Burdick, if the

8     matter were to be presented to the grand jury, it would be up

9     to the grand jury whether they charge you with the crime or

12:36:21PM 10    whether they dismiss the charge against you.  Do you

11    understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  However, Mr. Burdick, do you understand

14    that you can give up -- it's called waive your right to go to

12:36:29PM 15    the grand jury and consent, that is agree to be prosecuted by

16    what is called a felony information filed with the United

17    States attorney.  Do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And do you understand, Mr. Burdick,

12:36:39PM 20    that if you do agree to that, that information, once it is

21    filed, is just like an indictment returned by a grand jury?

22    Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  And do you understand, Mr. Burdick,

12:36:49PM 25    under this plea agreement, that is exactly what you are being

1    required to do, waive indictment?  Do you understand that?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Mr. Burdick, would it be correct to say

4    that you do want to waive indictment because you want to get

12:36:59PM 5    the benefits of the plea agreement?  Would that be correct?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Mr. Burdick have you discussed fully

8    with Mr. Smith your right to indictment by a grand jury?

9            THE DEFENDANT:  Yes.

12:37:10PM 10            THE COURT:  Have you talked to him about that,

11    Mr. Smith?

12            MR. SMITH:  Yes.

13            THE COURT:  Do you have any questions for me about

14    the right you would be giving up?

12:37:18PM 15            THE DEFENDANT:  No, sir.

16            THE COURT:  If this then is what you want to do,

17    Mr. Burdick, in a moment, I'm going to ask you to sign the

18    waiver form in front of you.  Before you do so, however, I

19    want you to understand that if and when you sign it, what you

12:37:31PM 20    are doing is telling me in writing that you do understand your

21    right to indictment by a grand jury and are freely giving up

22    that right.  If this is the truth and this is what you want to

23    do, I would ask you to sign the form then.

24            For the record, the Court is observing Mr. Burdick

12:37:52PM 25    sign the waiver form.  The Court is satisfied based on answers

1  he has given to questions put to him by the Court, based on

2  his demeanor in answering the questions, and based on the

3  signing of the waiver form which Mr. Smith has signed to

4  witness his client's signature, that the waiver of indictment

12:38:06PM 5  is being entered knowingly, intelligently, and voluntarily.

6  Accordingly, the Court is signing proving the

7  waiver of indictment and dating it today's date which is May

8  16, signing it, proving the waiver of indictment, and handing

9  it back to Ms. Allen for filing.

12:38:23PM 10  Mr. Burdick, you are now accused by way of felony

11  information followed by the acting United States Attorney

12  James Kennedy, signed by Mr. Rossi on his behalf of one count

13  of violation entitled 18 of the United States Code Section

14  2423(a) transportation of a minor in commerce with intent to

12:38:50PM 15  engage in criminal sexual activity.

16  Mr. Smith, have you been provided a copy of the

17  information.

18  MR. SMITH:  Yes, I have.

19  THE COURT:  Do you waive a full reading?

12:38:56PM 20  MR. SMITH:  Yes, I do.

21  THE COURT:  Mr. Burdick, at this point I am going

22  to enter a not guilty plea on your behalf because before I ask

23  you if you do want to plead guilty, there are other things I

24  have to go over with you first.  Do you understand that?

12:39:02PM 25  THE DEFENDANT:  Yes, sir.

1          THE COURT:  What I would like you to do now then is

2     return to the plea agreement and go over now to page 12,

3     paragraph 32, and follow along as I read it.  It says, "this

4     plea agreement represents the total agreement between the

12:39:16PM 5     defendant, Carl L. Burdick, and the Government.  There are no

6     promises made by anyone other than those contained in this

7     agreement.  This agreement supercedes -- supercedes means

8     takes the place of -- any other prior agreements, written or

9     oral, entered into between the Government and the defendant.

12:39:33PM 10    It goes on to say I have read this agreement which consists of

11    13 pages.  I have had a full opportunity to discuss this

12    agreement with my attorney, Robert Smith, Esq.  I agree that

13    it represents the total agreement reached between myself and

14    the Government.  No promises or representations have been made

12:39:45PM 15    to me other than what is contained in this agreement.  I

16    understand all the consequences of my plea of guilty.  I fully

17    agree with the contents of this agreement.  I have signed this

18    agreement voluntarily of my own free will.  Mr. Burdick, is

19    that all true?

12:39:59PM 20         THE DEFENDANT:  Yes, sir.

21          THE COURT:  If that is true, in a moment I am going

22    to ask you to sign the plea agreement.  However, before doing

23    so, as to the plea agreement, I want you to understand if and

24    when you sign it, what you are doing in effect is telling me

12:40:10PM 25    in writing that you do indeed understand all of the terms and

1 conditions and that you are in fact entering into it freely.

2 Mr. Burdick, if that's the truth and this is what you want to

3 do, I would ask you to please sign the agreement at this time.

4          For the record, the Court is observing Mr. Burdick

12:40:26PM 5 sign the plea agreement.  The Court is satisfied based on the

6 answers he has given to the questions posed by the Court,

7 based on his demeanor in answering the questions, and based on

8 the signing of the plea agreement that the plea agreement and

9 the plea are being entered into knowingly, intelligently, and

12:40:36PM 10 voluntarily.  The Court is, again, observing Mr. Smith sign at

11 this time to witness his client's signature on the plea

12 agreement.

13          Mr. Burdick, the next thing I need to do is go over

14 with you your rights that you give up when you plead guilty

12:40:51PM 15 instead of going to trial.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  If you have any questions, what are you

18 going to do?

19          THE DEFENDANT:  Stop you and ask you.

12:40:58PM 20          THE COURT:  Absolutely.  Mr. Burdick, do you

21 understand that under our law you have the absolute right to

22 continue to plead not guilty and go to trial on these charges

23 if you wanted to?  Do you understand that?

24          THE DEFENDANT:  Yes, sir.

12:41:04PM 25          THE COURT:  And do you understand that if you did

1   want to go to trial, you would be entitled to a trial by jury.

2   Do you understand that?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Moreover, Mr. Burdick, do you

12:41:12PM 5   understand that if you did want to go to trial, you would be

6   entitled to continued representation by Mr. Smith free of

7   charge at the trial, and in fact, at all stages of the

8   proceedings.  Do you understand that?

9            THE DEFENDANT:  Yes, sir.

12:41:22PM 10           THE COURT:  Furthermore, do you understand that if

11  you did want to go to trial, it would be up to Mr. Rossi upon

12  behalf of the Government to call witnesses and produce

13  evidence against you.  Do you understand that?

14           THE DEFENDANT:  Yes, sir.

12:41:29PM 15           THE COURT:  Further, do you understand that if you

16  did want to go to trial, Mr. Smith on your behalf would have

17  the right to challenge any evidence that Mr. Rossi tried to

18  introduce against you and you would have the right to cross

19  examine and confront any witnesses that Mr. Rossi called to

12:41:47PM 20  testify against you?  Do you understand that?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  In addition, Mr. Burdick, do you

23  understand that if you did want to go to trial, you would have

24  the right to testify in our own defense or the right not to

12:41:57PM 25  testify?  Also, if you wanted as part of defendant's case to

1  call witnesses and even compel them to testify by subpoena or

2  put on other evidence by the way of the defendant's case or

3  choose not to do that, and if in fact, Mr. Burdick, you chose

4  not to testify or if indeed you chose not to put on any

12:42:19PM 5  evidence as the defense case, I would specifically explain to

6  the jury that they could in no way consider such factors as

7  any evidence of your guilt or for that matter evidence of

8  benefit.  Do you understand?

9           THE DEFENDANT:  Yes, sir.

12:42:30PM 10          THE COURT:  Next, do you understand that before a

11  jury can find you guilty of this charge, the Government must

12  prove to their satisfaction each of the essential elements in

13  the crime as set forth in the plea agreement in paragraph

14  seven on pages three and four?  That is, the Government must

12:42:44PM 15  prove before a jury can convict you beyond a reasonable doubt

16  that you knowingly transported a minor in interstate commerce

17  from the state of New York to the state of Montana.  Secondly,

18  the Government must prove beyond a reasonable doubt that you

19  did so with the intent with the minor to engage in criminal

12:43:02PM 20  sexual activity for which any person can be charged with a

21  criminal offense.  And third, they would have to prove beyond

22  a reasonable doubt that the minor was under the age of

23  18 years at the time.  Do you understand that?

24          THE DEFENDANT:  Yes, sir.

12:43:15PM 25          THE COURT:  In other words, Mr. Burdick, I would

1  explain to the jury that if the Government failed to prove any

2  one or more of those elements beyond a reasonable doubt, they

3  must acquit you.  Do you understand?

4              THE DEFENDANT:  Yes, sir.

12:43:22PM 5              THE COURT:  Do you also understand, Mr. Burdick,

6  that before a jury can find you guilty of these charges, they

7  must being unanimous in their verdict?  That means all 12

8  people -- 12 people normally sit on a criminal case in federal

9  court or under some limited circumstances 11.  Each juror for

12:43:38PM 10  himself or herself must find that the Government has proved

11  the requisite elements of this crime beyond a reasonable doubt

12  before the jury can then return a verdict of guilty.  Do you

13  understand that?

14              THE DEFENDANT:  Yes, sir.

12:43:46PM 15              THE COURT:  Mr. Burdick, do you understand that by

16  pleading guilty you are giving up all of these rights?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  Do you understand that a plea of guilty

19  is the same as if a jury found you guilty after trial?

12:43:56PM 20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  Now, I need to point out to you,

22  Mr. Burdick, do you have a prior felony conviction?

23              THE DEFENDANT:  One from 1984, your Honor.

24              THE COURT:  Well, if you have a prior felony and

12:44:08PM 25  this is your second felony, under New York Law you are going

1    to permanently lose certain civil rights.  For example, you

2    will permanently lose your right to hold certain licenses and

3    offices.  And while you are under court supervision, you lose

4    your right to vote.  Do you understand that?

12:44:18PM 5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Now, please listen carefully to this

7    next question, Mr. Burdick.  Other than the promises contained

8    in the written plea agreement, have any other promises been

9    made to get you to plead guilty?  You have to answer.

12:44:29PM 10              THE DEFENDANT:  No, your Honor.

11              THE COURT:  Has anyone forced you to plead guilty?

12              THE DEFENDANT:  No, your Honor.

13              THE COURT:  Has anyone threatened you in any way to

14    get you to plead guilty?

12:44:36PM 15              THE DEFENDANT:  No, your Honor.

16              THE COURT:  Again, Mr. Burdick, based on your

17    conversations with Mr. Smith and given the facts and

18    circumstances, you believe this is what's best for you to do?

19              THE DEFENDANT:  Yes, your Honor.

12:44:46PM 20              THE COURT:  Mr. Burdick, have you answered my

21    questions truthfully?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  Do you have any questions for me

24    because now would be your final opportunity?

12:44:55PM 25              THE DEFENDANT:  No, sir.

1          THE COURT:  Now, before I can accept your plea of

2     guilty, you have to tell me what you did.  In that regard, I'm

3     going to direct your attention to page four, paragraph eight

4     where it is stated that you and the Government agree to the

12:45:06PM 5     following facts:  Subparagraph A that between July 1st, 2015,

6     and July 31st, 2015, here in the Western District which would

7     include Wayne County, Monroe County, that you -- and you were

8     born in 1958 -- transported a 15-year-old minor who lived in

9     Wayne County from Wayne County to the state of Montana; is

12:45:34PM10     that correct?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And did you do that with the intent to

13     engage in criminal sexual activity?

14          THE DEFENDANT:  Yes, your Honor.

12:45:41PM15          THE COURT:  And that was specifically sexual

16     conduct with her; is that correct?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Now, is it true, Mr. Burdick, that

19     before transporting her to Montana, you had taken her up to

12:45:58PM20     Watertown; is that correct?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  And you engaged in sexual intercourse

23     with her in your cab?

24          THE DEFENDANT:  No, sir, in a motel.

12:46:06PM25          THE COURT:  In a motel.  And did you also engage in

1    an oral sexual contact with her, just sexual intercourse?

2                   THE DEFENDANT:  Yes.

3                   THE COURT:  Okay.  In subparagraph B, is it correct

4    that you were, back in the spring of 2015, that you were a

12:46:23PM 5    tractor trailer driver and you developed a relationship with

6    her via your cell phone over the internet; is that correct?

7                   THE DEFENDANT:  Yes, sir.

8                   THE COURT:  How did that happen?

9                   THE DEFENDANT:  She texted me by accident, your

12:46:37PM 10    Honor.  She thought she was texting a friend of hers.  And

11    when she texted me, I texted her back.  I said, "You have the

12    wrong person."  And she said, "No, I don't."  And the

13    conversation went on from there, your Honor.

14                   THE COURT:  So and initially, you didn't tell her

12:46:55PM 15    your age; right?

16                   THE DEFENDANT:  No, I didn't tell her how old I

17    was, but she also told me at the time that she was 18.

18                   THE COURT:  But then you learned she was 15?

19                   THE DEFENDANT:  Yes, sir.  Two or three months

12:47:04PM 20    later, yes, sir.

21                   THE COURT:  Before you had sexual intercourse with

22    her?

23                   THE DEFENDANT:  Yes, sir.

24                   THE COURT:  And then did you ask her to send nude

12:47:12PM 25    photographs of herself?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Did you send her nude photographs of

3  yourself?

4          THE DEFENDANT:  No, sir, I don't think I ever did.

12:47:21PM 5          THE COURT:  Okay.  But you did ask her to send --

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And you knew at least some of the time

8  that she was 15.

9          THE DEFENDANT:  The second time I asked her -- I

12:47:28PM 10  asked her twice, and the second time I did know.

11          THE COURT:  The second time she sent you the

12  pictures?

13          THE DEFENDANT:  Yes, the second time I knew of her

14  age.

12:47:35PM 15          THE COURT:  What were the pictures of her vagina or

16  buttocks?

17          THE DEFENDANT:  Her whole body.

18          THE COURT:  And you agree, at least from what you

19  said, that when you took her to Montana and engaged in sexual

12:47:52PM 20  intercourse with her, you knew she was 15; is that correct?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  And during the ride from New York to

23  Montana in different states, did you engage in sexual

24  intercourse with her?

12:48:06PM 25          THE DEFENDANT:  Only twice, your Honor.

1          THE COURT:  Twice.

2          THE DEFENDANT:  Because I was actually under the

3   gun because my boss would --

4          THE COURT:  Do you remember what states you had

12:48:13PM 5   intercourse with her?

6          THE DEFENDANT:  I don't, your Honor.

7          THE COURT:  But it was outside of New York;

8   correct?

9          THE DEFENDANT:  Yes.

12:48:20PM 10          THE COURT:  Now, I want to ask you something.  So

11   you had a female friend of yours from Watertown call the 15

12   year old's mom to set up a --

13          THE DEFENDANT:  No, I don't know where that came

14   from.

12:48:29PM 15          THE COURT:  How did you end up taking her to

16   Watertown?

17          THE DEFENDANT:  I went to her mom and dad's house,

18   and she was -- she had texted my cousin -- or my cousin's

19   daughter.  Okay?  And that's how that came about coming to

12:48:47PM 20   Watertown.

21          THE COURT:  Okay.  So she told her -- apparently,

22   she told her parents that she wanted to visit your cousin's

23   daughter and that you just said you would take her up there.

24          THE DEFENDANT:  Yes, sir.

12:48:58PM 25          THE COURT:  I have to ask you this because I ask

1 everybody.  Mr. Burdick, you seem like a low key kind of guy.

2 You had to obviously know this was wrong; is that a fair

3 statement?

4     THE DEFENDANT:  Yes, sir.

12:49:11PM 5     THE COURT:  Explain to me then why would you do

6 something that, you know, kind of everyone knows is wrong.

7     THE DEFENDANT:  I don't have any excuses, your

8 Honor.  I truly loved these people, her mom, her dad --

9     THE COURT:  So you met her mom and dad?

12:49:32PM 10     THE DEFENDANT:  Yes, I've stayed in their home.  I

11 spent the night in their home with them.  Her mom and dad

12 signed the release, you know, medical release for her to be

13 with me in the truck.  I had her two little brothers in the

14 truck with me on a trip to Pennsylvania.

12:49:56PM 15     THE COURT:  They had no clue what was going on

16 between you two at the time?

17     THE DEFENDANT:  Between me and Faith, no.

18     THE COURT:  In any event, the Court finds based on

19 Mr. Burdick's acknowledgement of the allegations contained in

12:50:06PM 20 paragraph eight of the plea agreement in the statements to the

21 Court that a factual basis does exist for his plea of guilty.

22 The Court will accept that.  Mr. Burdick, I am now going to

23 ask you how, in Mr. Smith's presence, do you plead to a

24 violation in Title 18 of the United States Code Section 423(a)

12:50:25PM 25 as set forth in one count of felony information transportation

1   of a minor in commerce with intent to engage in criminal

2   sexual activity.  How do you now plead, guilty or not guilty?

3            THE DEFENDANT:  Guilty, your Honor.

4            THE COURT:  Do we have a date for sentencing?

12:50:43PM 5     THE CLERK:  August 17th at 9:00.

6            THE COURT:  Now, I just want to explain, in case

7   Mr. Smith hasn't, unfortunately, he is retiring.  So someone

8   else from the Federal Public Defender's Office will handle

9   your sentence.  They will be equally as -- it is difficult to

12:50:53PM 10  replace Mr. Smith, but they will be certainly qualified.  Do

11  you understand that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Thank you very much, Mr. Burdick.

14  Thank you very much.

12:51:01PM 15    MR. ROSSI:  Your Honor, August 17th I will be

16  beginning a jury trial with jury selection with Judge Wolford.

17  Is it possible -- that will last about three weeks.  It's

18  supposed to -- the plan now is that we will only be in session

19  during the morning until about 1:30 or 2:00.  So during those

12:51:15PM 20  three weeks, I could be available in the afternoons.

21           THE COURT:  We can do it at 2:00.  What about the

22  16th?  What is the 16th of August?

23           MR. ROSSI:  That's a Wednesday, Judge.  We are

24  starting on a Thursday for jury selection.  But Wednesday, I

25  am free.

1      THE CLERK:  I'm not sure where it will be, but I

2  will have to find a courtroom.

3      THE COURT:  Find a courtroom for the 16th.

4      THE CLERK:  Okay.

5      THE COURT:  Thank you very much.  Thank you, Kathy.

6  Thank you, Briana.

7      MR. ROSSI:  Thank you, your Honor.

8      THE COURT:  August 16th, 9:00.

9      (Whereupon, the proceeding concluded at 12:51 p.m.)

10                      *    *    *

11

12                REPORTER CERTIFICATE

13    I, Briana L. Jeffords, do hereby certify that I did report

14  in stenotype machine shorthand the proceedings held in the

15  above-entitled matter.

16

17              *Briana L. Jeffords*
                BRIANA L. JEFFORDS
18              Freelance Court Reporter and
                Notary Public No.  01JE6325111
19              in and for Genesee County, New York

12:09:01PM 20

21

22

23

24

25