# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

v.

**CARL L. BURDICK,**

         **Defendant.**

17-cr-06074-CJS

SENTENCING STATEMENT

    ANNE M. BURGER, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

1.     I am an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent the defendant, Carl L. Burdick [hereinafter "Carl"].

2.     The factual representations made in this Statement, unless otherwise indicated, are based on investigations by members of my office, review of the documents in the case including the PSR and discussions with Carl and others.

3.     I have reviewed the PSR and discussed it with Carl. Under the terms of the plea agreement, the defense continues to advocate for the guidelines calculations provided for in the plea agreement which calls for a guidelines range of 135-168 months. *See* Document 13.

4.     It is requested that the Court impose a sentence of 135 months, the low end of the plea agreement's guidelines range.

5.     It is also requested that the Court recommend to the Bureau of Prisons that Carl be housed as close to the Watertown, New York, area as possible so that his friends and family may be able to visit with him more frequently. Finally, it is requested that the Court recommend to the Bureau of Prisons that he be housed at a facility with a "SOMP Yard." This will increase

the likelihood that Carl will have access to therapeutic treatment during his imprisonment.

I. PROCEDURAL HISTORY

6. On January 26, 2017, Carl Burdick appeared in U.S. District Court on an underlying Criminal Complaint in the instant case. He was already in custody as he had been arrested by state law enforcement on January 21, 2017, on statutory rape charges involving the same victim in Jefferson County Court, New York. Those charges remain outstanding. On May 16, 2017, Carl pled guilty to a violation of 18 U.S.C. § 2423(a). Carl had transported a minor from the Western District of New York to Montana and, while doing so, engaged in sexual activity with the minor.

7. The plea agreement calculated a total guidelines range of 135 to 168 months imprisonment.

8. The initial PSR, prepared on June 28, 2017, calculated a guidelines range of 168 to 210 months imprisonment based upon its application of the cross-reference under U.S.S.G. § 2G1.3(c)(1). On September 14, 2017, a revised PSR was issued which rejected the previous calculations in favor of a yet higher range of 235 to 293 months based upon the application of U.S.S.G. § 4B1.5(b).

9. Following the issuance of the revised PSR, neither party has deviated from the provisions of the plea agreement. At several court appearances in the case the Government has adhered to the plea agreement's 135 to 168 month range. It has also been noted that the victim is in agreement with a sentence within the 135 to 168 month range.

10. As noted above, the defense also adheres to the plea agreement's calculated

guidelines range of 135 to 168 months.

11.     Carl is scheduled to be sentenced on March 27, 2018.

## II.     SENTENCING AUTHORITY

12.     The Guidelines range is but one of many factors set forth in 18 U.S.C. § 3553(a) that a district court is to consider when imposing sentence. *See generally United States v. Booker*, 543 U.S. 220 (2005). "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original). A district court's disagreement with the policy considerations of the Guidelines, for example, is a legitimate basis for sentencing below a given range. *See Gall v. United States*, 555 U.S. 38, 59 (2007) (upholding a district court's sentence of probation in a case involving the distribution of over 10,000 pills of ecstasy where the Guidelines' range was 30-37 months); *Kimbrough v. United States*, 552 U.S. 85, 111 (2007) (upholding a district court's decision to sentence a defendant below the Guidelines range based on a disagreement with the Guidelines' policy of treating the distribution of crack cocaine more severely than powder cocaine). In every case, the sentencing court "must make an individual assessment based on the facts presented." *Gall*, 555 U.S. at 50.

13.     The overarching command of Section 3553(a) is that sentences should be "sufficient, but not greater than necessary" to achieve the basic goals of retribution, deterrence and rehabilitation. To arrive at such a sentence, district courts are directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need for the sentence imposed to provide just punishment, deterrence, and needed

educational and vocational training; (3) the kinds of sentences available; (4) the Guidelines-range and any pertinent policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution. *See* 18 U.S.C. § 3553(a).

### III. THE COURT SHOULD IMPOSE A SENTENCE AT THE LOW END OF THE PLEA AGREEMENT GUIDELINES RANGE

A.  The Sentencing Factors

<u>The nature of Carl's offense supports the requested sentence.</u>

14. In early 2015, a 15-year-old girl mistakenly texted Carl Burdick, then a 56-year-old man. Although she realized almost immediately that Carl was not the intended recipient of her text message, the two began an electronic friendship over the following weeks and months. Carl encouraged the relationship. For a time, the two were successful at concealing what quickly evolved into a sexual relationship from the girl's parents. The instant conviction relates to a time when the young girl, still aged 15, persuaded her parents to allow her to travel cross-country ostensibly with a friend and her friend's sister from Watertown. In reality, the couple planned to travel together to Montana in Carl's tractor trailer. It was described as an opportunity to experience things "as if they were living together without the issues of school and parents." PSR at § 31. The couple planned on – and did - engage in sexual activity during the trip.

15. After Carl picked the young girl up from her parents' home the two drove to Montana. The young girl documented the trip with postings of photographs of places they visited along the way.

4

16. Later, Carl was arrested in conjunction with the instant federal charge along with related criminal charges in New York State Court involving Rape in the Third Degree and Endangering the Welfare of a Child.

17. Carl takes full responsibility for his conduct. He well knows that nothing excuses his conduct:   neither his loneliness, his precarious emotional condition, nor his fundamentally erroneous belief at the time of his conduct that the couple's relationship was healthy. By committing this crime, he has put his future, and that of the victim, in grave jeopardy. He is very remorseful, and will never commit another offense.

Carl's background and characteristics support the requested sentence.

18. Carl Burdick was born in 1958. His family was impoverished and the Burdick children lacked opportunities for personal or financial success. Carl's mother offered what guidance she could to her children. She also did what she could for them emotionally and materially.   Given her circumstances, however, she was obviously limited in her ability to do so. Carl's mother gave birth to Carl's older sister within days of turning 16 years old and to Carl when she was only 17 years old. Despite these limitations, Carl has always dreamed of achieving financial success and having a family of his own.

19. Carl grew up in a modest home in Watertown, New York, which his parents rented. A dated image of the home follows.



Carl was very close to his mother.  His father was emotionally distant.  As is noted in the PSR Carl recalls his father telling him he loved him perhaps once in his entire life.  His father is now deceased.

20.     Carl's parents found some financial relief when they permitted him to move into his Aunt and Uncle's home in Henderson, New York, when he was roughly 16 years old. The reason for the move – 20 miles away from Watertown – was outwardly to allow Carl to play high school basketball in a less demanding division. Watertown high school was a Division A school. In reality, this arrangement resulted in a financial savings to his parents who were struggling to

support their family. In addition to their own children, Carl's parents were trying to assist in the support of their eldest daughter who, like her mother, gave birth to her first child at the age of 16.

21.     The Henderson property was in a rural, isolated area of Jefferson County. Despite its isolation, Carl has good memories of his time there and, even as an adult, he has returned to stay at his Aunt and Uncle's home, depicted below, from time to time.



22.     Given his modest beginnings, it is hardly surprising that Carl was unable to achieve success in his life. He dropped out of high school in the tenth grade. Within weeks of turning 17 years old, Carl enlisted in the United States Army. He lasted barely two years.

23. Since then, Carl has drifted. He has worked jobs as wide ranging as riding bulls and horses at rodeos and driving long distance tractor trailers, his most frequent employment. Carl is massively in debt; he has no assets or income and owes nearly $400,000 in outstanding judgments and liens.

24. Like Carl, his sisters have had little in the way of prospects for success. Carl's older sister works in a factory and lives in a sparsely populated area north of Watertown. Carl's younger sister struggles to support herself by working at a gas station convenience store in a rural area outside of Watertown. Even Carl's mother, who is retired, struggles financially. She lives in a trailer park near Watertown to keep her expenses to a minimum. Carl may not reasonably expect that his family will ever be in a position to assist him financially if he is able to complete his prison sentence and be released.

25. If the Court imposes a sentence above the plea agreement's guidelines range work will most likely be unavailable to him in light of his age. As a result, he will never be even minimally financially stable. A sentence at the low end of the plea agreement's guidelines range, however, would allow Carl to pursue employment after prison so that he could begin saving for old age, assuming he does not face civil commitment.

26. Carl has fared no better in his relationships than he has with financial matters. Carl's track record includes two failed marriages, one in 1990 and the other in 2001. Neither marriage lasted longer than two years. Carl had always hoped to build a family. He sees that this is now impossible. Carl is in his mid-50's and is facing a lengthy term of imprisonment. If he is able to avoid civil commitment and is released to supervision he will be required to comply with strict sex offender rules of release. At best, Carl now hopes to be in a position to spend some

time with his mother before she passes away. This too may be unrealistic as Carl's mother, well into her 70's, is not in good health.

<u>The sentence requested reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense. A sentence above the 135-168 month range would create an unwarranted sentencing disparity.</u>

27. As noted earlier, the victim herself has informed the Government that she is satisfied with a sentence for Carl within the 135 to 168 month guidelines range. The fact that the person who was the most harmed by Carl's conduct agrees that this range provides an appropriate sentence lends strong support to the defense's request for a sentence within this range. The community will receive a clear message that the victim's voice was heard if the Court imposes a sentence consistent with the victim's wishes. At the same time, the message sent is that other offenders should similarly expect that other, future victims' views as to sentencing will be heard.[1]

28. Sentencing Commission statistics also support the imposition of a sentence at the low end of the plea agreement's 135 to 168 month guidelines range. The United States Sentencing Commission publishes sentencing statistics relating to the application of the guidelines and the imposition of sentences nationwide. As to offenses like Carl's, which fall within the primary offense category of sexual abuse, the Sentencing Commission publishes statistics regarding the mean and median sentences imposed each year on such federal offenders.

---

[1] Needless to say the Court is not required to impose a sentence requested by a victim. Certainly the Court has an independent obligation to fully comply with 18 U.S.C. § 3553(a). The views of a victim are a factor for the Court to consider.

Over the past several years, mean and median sentences imposed for those convicted of sexual abuse offenses in Criminal History Category I have consistently been lower than the 135 to 168 month range provided for in the plea agreement. For example, in fiscal year 2013, the Sentencing Commission reported that, for the 406 sexual abuse offenders sentenced that year, the mean sentence imposed for those, like Carl, in Criminal History Category I, was 122 months. The median sentence imposed for such offenders was 120 months. Available at https://www.ussc.gov/research/sourcebook/archive/sourcebook-2013 Table 14 (accessed 3/16/18). Likewise, the Commission reported that, in 2014, the mean sentence for such offenders was 127 months and the median sentence was 120 months and, in 2015, the mean sentence was 109 months and the median was 101 months. Available at https://www.ussc.gov/research/sourcebook/archive/sourcebook-2014 Table 14 (accessed 3/16/18), and https://www.ussc.gov/research/sourcebook/archive/sourcebook-2015 Table 14 (accessed 3/16/18).[2] In Fiscal Year 2016, the mean and median sentences increased slightly to a mean sentence of 134 months and a median sentence of 120 months – still lower than the plea agreement's 135 to 168 month guidelines range. Available at https://www.ussc.gov/research/sourcebook-2016 Table 14 (accessed 3/16/18).

B.  The Court Should Decline to Impose a Sentence Based Upon the Application of U.S.S.G. § 4B1.5 for Policy Reasons.

---

[2] Based upon a review of the Sentencing Commission's statistical publications, it does not appear that the Commission publishes data relating to the imposition and the ultimate sentence imposed for offenders to whom U.S.S.G. § 4B1.5 has been applied. Although Career Offender and Armed Career Criminal information is cited, these instances appear to be based upon the application of U.S.S.G. §§ 4B1.1 and 4B1.4.

29. The Supreme Court and Second Circuit Court of Appeals have made it abundantly clear that district courts "may vary from the Guidelines range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses." *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008). Where the guidelines involved are "a product of traditional empirical and experiential study" a variance in a mine-run type of case, however, could call for closer appellate review. *Id.* at 193 (internal quote and citation omitted). Here, however, the guideline at issue was not enacted on the basis of empirical evidence. As a result, the Court should decline to base Carl's sentence on the Guideline for policy reasons.

30. Section 3553(a)(1) requires sentencing courts to consider "the nature and circumstances of the offense." Should the Court impose a sentence based upon the application of the U.S.S.G. § 4B1.5 Guideline, in doing so it will run afoul of the requirement that it consider the "nature and circumstances of the offense" in imposing sentence.

31. The title of § 4B1.5 is "Repeat and Dangerous Sex Offender Against Minors." The Background Commentary provides that it "applies to offenders whose instant offense of conviction is a sex offense committed against a minor *and who presents a continuing danger to the public*." (Emphasis added). The Commentary ends with an explanation that Congress "directed the Commission to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." *Id.* "Pattern" is defined in the commentary as involving a defendant who "on at least two separate occasions . . . engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5 comment. n. 4(B)(i). In reality, only a tiny portion of offenders convicted of a qualifying offense would NOT qualify for the

11

enhancement. The Commission – and Congress's – motivation of causing longer sentences to be imposed for truly dangerous repeat offenders at high risk of recidivating is laudable. However, to the extent that the provision is designed to combat the increased risk of recidivism in such repeat offenders, it ignores the rationale and treats what could, essentially, be a first offense in the same way as it treats those who have been convicted of the conduct and, once again, repeated their offense.

32. In addition, as with certain other guidelines, § 4B1.5 was not promulgated following "careful study based on extensive empirical evidence." *Gall v. United States*, 552 U.S. at 46. The Commission "promulgated [§ 4B1.5] primarily in response to the Protection of Children from Sexual Predators Act of 1998," Appx. C. Amend. 615 (2001) (Reason for Amendment), and not on the basis of any empirical evidence. Under the original version of the amendment which required that there be "at least two minor victims," Carl would not have even qualified for the five-level increase. U.S.S.G. Appx. C, Amend. 649 (2003). In light of these factors, this Court should scrutinize the pattern increase more closely. *Kimbrough v. United States*, 552 U.S. at 89, *see also United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (recognizing that the "deference to the Guidelines" depends upon, among other things, "the validity of [the Sentencing Commission's] reasoning." (Internal citation omitted)).

33. In this instance, the Court should not impose a sentence based upon the guideline in question because it was not promulgated following "careful study based on extensive empirical evidence." *Gall* at p. 46. Indeed, it lacked empirical support. Moreover, the guideline would call for the same sort of sentence for Carl as for an offender with multiple prior convictions for sexual offenses against minors and/or multiple separate victims. To impose a

12

sentence based upon the guideline here would ignore Carl's personal history and characteristics and the nature of his offense.

## IV. STATUTORY ASSESSMENT

34. Regarding the reference in PSR paragraph 99 to the special assessment of $5,000 pursuant to 18 U.S.C. § 3014, it is respectfully submitted that the Court should not impose the assessment as Carl is indigent. Carl has neither income nor assets and, as noted above, owes nearly $400,000 in various judgments and liens.

## V. CONCLUSION

35. Based upon the above, it is respectfully requested that the Court impose a sentence at the low end of the 135 to 168 month guidelines range in the plea agreement. It is further requested that the Court recommend to the Bureau of Prisons that Carl be housed as close to the Watertown, New York, area as possible and that he serve his sentence at a facility with a "SOMP Yard." Finally, it is requested that the Court not impose the $5,000 assessment in light of Carl's indigence.

Dated: March 16, 2018                           /s/Anne M. Burger
                                                Anne M. Burger
                                                Assistant Federal Public Defender
                                                Federal Public Defender's Office
                                                28 E. Main Street, Suite 400
                                                Rochester, New York 14614
                                                (585)263-6201
                                                Anne_Burger@fd.org
                                                Attorney for Carl Burdick

To: Kyle Rossi, AUSA
    Jessica Rider, USPO