1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE WESTERN DISTRICT OF NEW YORK

3                      ROCHESTER DIVISION

4    ----------------------------------

5    THE UNITED STATES OF AMERICA,

6

7    -versus-                         DOCKET NO:  17-CR-6074

8

9    CARL L. BURDICK,

10                      Defendant.

11   ----------------------------------

12                   TRANSCRIPT OF SENTENCING

13          BEFORE THE HONORABLE CHARLES J. SIRAGUSA

14                 UNITED STATES DISTRICT JUDGE

15                   TUESDAY, MAY 17, 2018

16

     A p p e a r a n c e s:
17
     On Behalf of the Government:
18
         Kyle Rossi, Assistant US Attorney
19
     On Behalf of the Defendant:
20
         Anne Burger, Esq.
21       Defendant present

22   On Behalf of Probation:

23       Jessica Rider

24
     R e p o r t e d   B y:
25
         Briana L. Jeffords

1    THE COURT:  For the record, this is the matter of
2  the *United States versus Carl Burdick*.
3    Good morning, Mr. Burdick.
4    THE DEFENDANT:  Good morning, your Honor.
10:47:45AM 5    THE COURT:  You are appearing with your attorney,
6  Ms. Burger; is that correct?
7    THE DEFENDANT:  Yes, your Honor.
8    MS. BURGER:  Judge, would it be okay if Mr. Burdick
9  is seated during the proceeding?
10:47:52AM 10    THE COURT:  Absolutely.
11    MS. BURGER:  Thank you.
12    THE COURT:  Mr. Rossi is here on behalf of the
13  Government.  And if my memory serves me correctly, it's Mr.
14  and Mrs. Martin; is that correct?  You are welcome to be here.
10:48:01AM 15    This is a continuation of the sentencing.
16  Mr. Burdick, the Court would intend to pick up where we left
17  off unless anyone has an objection to that.
18    MS. BURGER:  That's fine.
19    THE COURT:  I certainly went through all of the
10:48:15AM 20  preliminaries last time.
21    I recall the issue you raised, Ms. Burger, was
22  about any truth verification provision.  The Court ordered
23  your recommendations that would apply to the one suggested
24  because that was the product of some effort on the part of the
10:48:30AM 25  Court.

1          Where we left off -- and is that acceptable with

2    you, Mr. Burdick, if we just pick up where we left off?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Mr. Rossi, is that acceptable to the

10:48:47AM 5    Government?

6          MR. ROSSI:  Yes, Judge.

7          THE COURT:  And here is where we left off.  I was

8    going through the sentencing factors.  And the Court did go to

9    the mention of the sentencing -- one of the sentencing

10:49:00AM 10   factors.  I indicated I considered all of the sentencing

11   factors, the nature and circumstances of the offense and the

12   history and characteristics of the defendant.  And in that

13   regard, I referred to paragraph 84 of the Presentence

14   Investigation Report which details a prior incident with a

10:49:26AM 15   14-year-old girl.  I won't repeat it, but I essentially read

16   from paragraph 84.  And I thought -- and I indicated that was

17   certainly relevant, in my mind, on the defendant's

18   characteristics.

19         At that point, Ms. Burger, you were concerned that

10:49:43AM 20   might somehow impact the sentence.  That you had not

21   specifically had an opportunity to address that.  We had a

22   discussion about if it was contested, then the Court, pursuant

23   to directions at his sentencing hearing, didn't need to

24   conduct a full blown evidentiary hearing.  It was disputed,

10:50:07AM 25   could rely on, without a term, reliable hearsay.  That's the

1   point, I think what Mr. Rossi indicated, there was an

2   affidavit that had been obtained from the 14-year-old victim

3   in the prior case.  The Court -- Mr. Rossi indicated it had

4   not been provided to the Court, but it had been provided to

10:50:26AM 5   the defense.  You indicated that you wanted a chance to

6   discuss this with Mr. Burdick to see if he wanted to contest

7   what was set forth in paragraph 84 or what was set forth in

8   the affidavit.  We received nothing.  So I assume Mr. Burdick

9   does not want to contest that.

10:50:44AM 10       MS. BURGER:  Let me, I guess, fill the Court in a

11  bit.  Obviously, I was not the issue attorney on the case.

12  And I began representing Mr. Burdick after Mr. Smith retired

13  and that was between plea and sentence.  I would note that

14  very early on in the case the affidavit which is, in my view,

10:51:00AM 15  essentially summarized in its important respects in the PSR,

16  each of the versions of the PSR, was provided to Mr. Smith.

17       Since we last appeared, I had the opportunity to

18  have someone from my office speak to the victim in that case,

19  interview her, speak to her, speak to her mother, and I have

10:51:19AM 20  been able to satisfy myself with respect to her account.  And

21  I have conveyed that to Mr. Burdick.  And in these

22  discussions, the fruit of the discussions are that Mr. Burdick

23  has decided that he does not wish me to lodge an objection.

24  It is understood that the Court will take that information in

10:51:41AM 25  that paragraph as fact since we are not opposing it, but

1   that's what's happened since we were last here.

2              THE COURT:  Is that correct, Mr. Burdick?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Thank you very much.  Then we can

10:51:53AM 5   proceed.  As I was pointing out at the time that we adjourned

6   sentencing, I have taken into consideration all of the factors

7   as required in 18 USC Section 3553 including, of course, as I

8   said, the nature and circumstances of the offense, your

9   history and characteristics including paragraph 84 was

10:52:15AM10  detailed by the Court.  I have considered the need for the

11  sentence imposed to reflect the seriousness of the offense.

12             Obviously, it goes without saying that this was a

13  serious crime as contained in the chapter of the federal laws

14  book of sexual exploitation of children.  And this clearly was

10:52:36AM15  egregious conduct involving a 15-year-old child.

16             I have considered the need for the sentence imposed

17  to promote respect for the law to provide you with a just

18  punishment.  I have considered the importance of imposing a

19  sentence that affords an adequate deterrence to criminal

10:52:55AM20  conduct.  In other words, hopefully, it makes anyone in the

21  community who pays attention to this proceeding say you can't

22  engage in this kind of conduct or you face the penalties.

23             I have considered the sentence needed to protect

24  the public from further crimes on your part.  I have

10:53:11AM25  considered what is the appropriate sentence to provide you

1  with whatever care, treatment, and training you need in the

2  most effective manner.  I have considered the need to avoid

3  unwarranted sentencing disparities among defendants with

4  similar records and found guilty of similar conduct.

10:53:27AM 5        I have considered the issue of restitution.

6  Although that is not an issue in this case; is that right,

7  Mr.  Rossi?

8        MR. ROSSI:  That's correct, Judge.

9        THE COURT:  And I have considered the sentences

10:53:38AM 10  available.  I have considered the sentences available under

11  the statute.  I know that under the statute I can impose a

12  sentence of life imprisonment.  And of course, I have

13  considered the sentences recommended under the advisory

14  sentencing guidelines.

10:54:02AM 15        As to the Second Circuit's direction and in

16  accordance with the Crosby and Gonzalez cases, I made the

17  following findings which allowed me to properly consider the

18  advisory sentencing guidelines along with all of the

19  sentencing factors.

10:54:17AM 20        I have determined that your base offense level is

21  28, but there should be increases.  A two-level increase

22  pursuant to Guideline Section 2G1.3(b)(1)(B) because the minor

23  involved was otherwise in your care, custody, or control.

24  Obviously, we have the trips -- the trip to Montana among

10:54:46AM 25  other things.

1    I have determined there should be a two-level

2  increase pursuant to Guideline Section 2G1.3(b)(2)(B) because

3  the minor was unduly influenced by you to engage in prohibited

4  sexual conduct.

10:55:09AM 5    Another two-level increase because the offense

6  involved the use of a computer.  That's pursuant to Guideline

7  Section 2G1.3(b)(3)(A).

8    Another two-level increase because the offense

9  involved the commission of a sexual act.  That is pursuant to

10:55:32AM10 Guideline Section 2G.3(b)(4)(A).

11    If you add up these increases, that's 28 and 2

12 takes you to 30.  Another 2 takes you to 32.  Another 2 takes

13 you to 34.  Another 2 takes you to 36.  And then we have --

14 pursuant to -- that takes you to a 36.  However, there is that

10:56:04AM15 five-level increase pursuant to Guideline Section 4B1.5(B)

16 involving that pattern of activity involving prohibited sexual

17 conduct.  That enhancement takes you to a 41.

18    While these were not specifically the numbers

19 agreed to in the plea agreement and there has been much

10:56:37AM20 discussion about that, these are the numbers recommended by

21 Ms. Rider in the Presentence Report.  This is what the Court

22 finds.  And there has been really no objection to these

23 findings.  There has been edification to the Guidelines

24 contained in the plea agreement, but no objection to these

10:56:58AM25 findings.

However, I do believe based on the information that Ms. Burger has brought to my attention on your behalf that you are entitled to a three-level reduction for acceptance and responsibility which takes you down to a 38.

Your criminal convictions resulted in a Criminal History Category 1 which is actually the lowest. And with a criminal history of 1 and an offense level of 38, the recommended range under the advisory guidelines is 235 months to 293 months in prison. Now, 235 months is 19 years 7 months. 293 months is 24 years and 5 months.

The recommended period of the supervised release is five years to life. Probation is not recommended. Fine range recommended is $25,000 to $250,000. Restitution is not an issue. And there is no dispute that Mr. Burdick is indigent; is that correct? So the only assessment would be the $100 special assessment.

MR. ROSSI: That's correct, Judge.

THE COURT: So there would be no additional $5,000 assessment; is that right, Mr. Rossi?

MR. ROSSI: Correct.

THE COURT: So these would be my options under the advisory guidelines. These are the recommendations. Now, this is an unusual case because the -- while the plea agreement precluded either you or the Government from arguing for sentence outside of the guidelines calculated in the plea

1   agreement, these are a different guideline sentence.

2           So pursuant to the plea agreement and the authority

3   of the plea agreement, Ms. Burger has argued for a sentence of

4   135 months, just so we are on all squares.  That's perfectly

10:59:52AM 5   permissible based on the plea agreement; is that right,

6   Mr. Rossi?

7           MR. ROSSI:  Yes, Judge.

8           THE COURT:  To get there, therefore, I would have

9   to either depart downward under the guidelines or give a

11:00:06AM 10   non-guideline sentence.  So based on the landscape of this

11   case, the Court is considering Ms. Burger's request as either

12   a request for a departure within the guideline analysis or a

13   non-guideline sentence considering all of the factors.

14           Let's start off with the guideline analysis because

11:00:31AM 15   whenever a sentence is made -- a request is made for a

16   sentence below the guideline range, the Court is obligated to

17   do two things.  First, I have to determine whether within the

18   guidelines, which are one of the sentencing factors, if there

19   is any basis for a downward departure.  Then I have to

11:00:52AM 20   consider, apart from that, whether there is any basis for a

21   non-guideline sentence.

22           The distinction is that on a departure, based on

23   the guidelines, you are considering one of the sentencing

24   factors, the guidelines.  And a non-guideline sentence you are

11:01:08AM 25   considering all of the sentencing factors I just went through.

1          With respect to a non-guideline sentence, Ms.

2     Burger makes an argument that 4B1.5(B) -- couple arguments, it

3     is not based on any empirical data.  An argument that kind of

4     stems from the Darby case which suggests that some of the

11:02:44AM 5     2G1.2 factors should not be roguery applied.

6          The Court is certainly aware of Darby.  Let me just

7     digress and say that this is obviously not a Darby case.  For

8     one thing, the maximum here is life.  For another, this is a

9     case where, Mr. Burdick, you acted out.  But the other

11:03:07AM10     argument Ms. Burger makes is, really this was not intended for

11     someone like you.  She suggests that this pattern was designed

12     to get repeat offenders not someone who with a victim, the

13     same victim, for the same offense engages in instances of

14     sexual activity.  I think the problem with that argument is

11:03:44AM15     4B1.5(A) which says in any case in which a defendant's instant

16     offense of conviction is a covered sex crime, 4B1.1, the

17     career offender statute, does not apply, and the defendant

18     committed the instant offense of conviction subsequent to

19     sustaining at least one sex offense conviction.  I think 4B1.5

11:04:11AM20     deals with individuals who commit a sex offense after

21     committing a previous sex offense.  So the Court disagrees and

22     believes, based on the reading of 4B1.5, that you do fit.

23     This was designed for somebody who engages, even with one

24     victim, the pattern of sexual activity.  And there is no

11:04:36AM25     dispute that occurred here.

1       The Court understands fully that under a guideline

2  analysis it can depart.  Even based on a policy disagreement,

3  if I disagreed with this, the Court has the ability to depart.

4  I don't disagree with it.  I think it fits.  But the Court

11:04:58AM 5  understands it has that discretion.  The Court also

6  understands that it can depart, under the guideline analysis,

7  based on one factor or based on the combination of factors.

8  However, in your case, Mr. Burdick, the Court does not believe

9  that any factor individually, or in combination, or

11:05:22AM 10  background, or any of the factors that Ms. Burger raises would

11  justify a departure downward within the guideline analysis.

12  That, of course, does not end the inquiry.

13       Several of the points Ms. Burger makes in the

14  submission go to a non-guideline sentence.  And again, the

11:05:45AM 15  distinction is that on a non-guideline sentence, the Court

16  considers all of the sentencing factors in Section 3553 and

17  determines whether or not, based on a consideration of all of

18  the factors, a non-guideline sentence is warranted.

19       I have done that.  And on consideration of those

11:06:04AM 20  factors, I do not believe a non-guideline sentence is

21  warranted.  And let me explain why.  The nature of the offense

22  supports the requested sentence.  It's one of the arguments

23  Ms. Burger makes, and I respectfully disagree.  You knew you

24  were dealing with a child all along.  The communications were

11:06:33AM 25  with a child.  Now, she didn't know your age initially and she

1    later learned it.  But you took advantage of the situation.  I

2    recall -- when you pled guilty, I asked you this:  "Explain to

3    me then why you would do something that you knew, kind of

4    everyone knows, is wrong."  Your response:  "I don't have any

11:07:04AM 5    excuses, your Honor.  I truly love these people, her mom, her

6    dad.  The Court:  So you met her mom and dad?  The Defendant:

7    Yes, I stayed in their home, spent the night in their home

8    with them."  It speaks something of your character, and

9    perhaps lack thereof in my mind, Mr. Burdick, that you are

11:07:32AM 10   abusing their child and yet taking advantage of their

11   hospitality to stay in their home.  So you know, I do not

12   believe that the nature of your offense supports 135 months.

13   I think quite the contrary.  I think the nature of your

14   offense, if anything, supports or points to the higher end of

11:08:13AM 15   the guidelines.

16         Your background and characteristics, well quite the

17   contrary.  I disagree with that too for the simple reason that

18   while Ms. Burger is arguing that your characteristics purport

19   a 135-month sentence and saying that I should take into

11:08:29AM 20   consideration your characteristics, I point to that other

21   offense with the 14-year-old child which I won't detail again.

22   But I think that clearly points to someone who is predatory in

23   nature.  You took advantage of that child just like you took

24   advantage of the child in this case.  So again, quite the

11:08:49AM 25   contrary from pointing to a non-guideline sentence.  I think

1    it does just the opposite.

2            I don't believe -- Ms. Burger also argues that 135

3    months is sufficiently consistent with the sentencing factor

4    relating to the seriousness of the offense.  Again, this

11:09:23AM 5    offense was calculated.  It involved deceit.  It involved

6    taking advantage of a child.  It is indicative of someone who

7    is morally bankrupt to engage in this kind of conduct with a

8    15-year-old child.

9            So the Court, for the reasons I have stated and in

11:09:59AM10    consideration of this argument, does not believe based on the

11    sentencing factors in 18 USC Section 3553 a non-guideline

12    sentence is appropriate.  The Court believes to the contrary

13    that a guideline sentence is called for.

14            Now, what guideline sentence?  Well, I think I can

11:10:24AM15    clearly justify sentencing the top end of the guidelines, but

16    I am mindful of your age.  Mr. Burdick, you are 59 years old.

17    While I understand that you get a good time credit and the

18    credit for the time you have in, the sentence for the lower

19    end of the guidelines will mean that you will stay in prison

11:10:47AM20    until you're in your late 70s.  Presumably, by that time any

21    predatory inclinations that you have for children would

22    hopefully be well, and I trust well, under control.

23            The Court has carefully considered all of the facts

24    and circumstances surrounding your conviction as well as the

11:11:20AM25    objectives of sentencing as set forth in 18 USC Section 3553.

1 Pursuant to that section of law and pursuant to the Sentencing

2 Reform Act of 1984, it is the judgment of the Court that you,

3 Carl Burdick, are hereby committed to the custody of the

4 Bureau of Prisons to be in prison for a term of 240 months.

11:12:03AM 5 That is 20 years.

6 Because the guideline range exceeds 24 months, I'm

7 required to explain why that sentence -- well, again, while I

8 have said that I think the sentence at the top of the

9 guidelines based on the awful conduct that you engaged in

11:12:32AM 10 would be justified, I'm mindful of your age. Whether you make

11 it out of prison at all, I don't know. So I think a sentence

12 in consideration of all the sentencing factors, the obligation

13 to protect the public from further crimes on your part, the

14 responsibility to impose a just sentence, a sentence to

11:13:01AM 15 reflect the seriousness of what you did, all of the sentencing

16 factors call for a sentence at the lower end of the guidelines

17 of 240 months. And that's why I'm imposing that.

18 The Court does believe a sentence of 240 months,

19 considering all of the 18 USC Section 3553 factors, as they

11:13:26AM 20 apply to the facts and circumstances of this case, is the

21 sentence sufficient but not greater than necessary to comply

22 with those sentencing requirements.

23 Upon your release from imprisonment, you shall be

24 placed on supervised release for 10 years. Why 10 years?

11:13:43AM 25 Well, there is no magical formula I apply. However, I did

1  consider the sentencing factors set forth in 18 USC Section

2  3553.  I am mindful of my responsibility to make sure you no

3  longer impose a threat to any children.  And I believe that is

4  the sentence appropriate considering the 18 USC Section 3553

11:14:08AM 5  factors that is needed to make sure that no children are put

6  in danger.  And therefore, I'm imposing that 10-year period of

7  supervised release.

8         Upon your release from imprisonment, you must

9  report to the probation office in the federal judicial

11:14:28AM 10  district where you are authorized to reside within 72 hours of

11  release from imprisonment unless the probation office

12  instructs you to report to a different probation office or

13  within a different timeframe.

14         While on supervised release, you shall not commit

11:14:39AM 15  another federal, state, or local crime.  You are prohibited

16  from possessing a firearm, ammunition, or other dangerous

17  device.  In addition, you shall not possess a controlled

18  substance and shall comply with the standard conditions that

19  are adopted by the Court.

11:14:53AM 20         You shall comply with the following special

21  conditions.  Since the incident offense occurred after

22  September 13th, 1994, drug testing is required by the 1994

23  Crime Control Act.  Additionally, you shall cooperate with the

24  collection of a DNA sample as required by the Justice for All

11:15:10AM 25  Act of 2004.

1          While on supervised release you shall not use or

2 possess any computer, data storage device, or any internet

3 capable device unless you participate in the computer and

4 internet monitoring program or unless authorized by the Court

11:15:33AM 5 or the US Probation Office.  You must provide the US Probation

6 Office with advance notification of my computers, automated

7 services, or connective devices that will be used during the

8 term of supervision.  The probation office is authorized to

9 install any applications necessary to surveil all activity on

11:15:55AM 10 any computers or connected devices which you own or operate.

11 You are required to pay the cost of monitoring services.  The

12 US Probation Office shall be notified via electronic

13 transmission of impermissible, suspicious activity, or

14 communications occurring on such computer or connected device

11:16:14AM 15 consistent with the computer monitoring policy in effect by

16 the probation office.  It is triggered by impermissible or

17 suspicious activity.

18          You shall consent to and cooperate with unannounced

19 examinations of any computer equipment which you own or use.

11:16:30AM 20 This examination shall include but is not limited to retrieval

21 and copying of all data from computers, connective devices,

22 storage media, and any internal or external peripherals and

23 may involve removal of such equipment for the purpose of

24 conducting a more thorough inspection.  Any such monitoring or

11:16:47AM 25 examination shall be designed to avoid, as much as possible,

1  reading any privileged information or any private material

2  that is not illegal or reasonably likely to lead to illegal

3  material or evidence related to illegal activity.

4         You must participate in the sex offense specific

11:17:06AM 5  treatment program and follow the rules and regulations of the

6  program.  The probation office will supervise the details of

7  your participation in the program including the selection of a

8  provider and schedule.  You are not to leave treatment until

9  complete or as ordered by the Court.  You are required to

11:17:22AM 10  contribute to the cost of services rendered.

11         Next, you shall not have deliberate contact with

12  any child under 18 years of age, excluding any of your own

13  biological or adopted children, unless approved by the

14  probation office or the Court.

11:17:40AM 15         You shall not loiter within 100 feet of

16  schoolyards, or playgrounds, or arcades, or other places

17  primarily used by children under the age of 18.  The probation

18  office has discretion to authorize you to pick up, if you had

19  your own children, from school or other functions.  However,

11:17:57AM 20  authorization must be obtained in advance from the probation

21  office or alternatively from the Court.

22         In order to monitor your compliance with not buying

23  or subscribing to online services that provide child

24  pornography, you shall provide the probation department with

11:18:14AM 25  access to any requested personal and/or business financial

1 information. You shall register with the state sex offender

2 registration in any state where you reside, or are employed,

3 carry on a vocation, or are a student and shall provide proof

4 of the registration to the probation office. The probation

11:18:31AM 5 office is authorized to release your presentence report to the

6 New York State Board of Examiners of Sex Offenders. Further

7 disclosure to the county court and the parties involved in

8 this determination of your final classification level is also

9 authorized.

11:18:48AM 10          You shall submit to a search of your person,

11 property, vehicle, place of residence, or other property under

12 your control based upon reasonable suspension and permit

13 confiscation of any evidence or contraband discovered.

14          You shall submit to a polygraph, computerized voice

11:19:05AM 15 stress analyzer, or other such testing not to exceed twice

16 during a calendar year and an additional two retests per year

17 as needed. The test may include examinations using a

18 polygraph, computerized voice stress analyzer, or other

19 similar device to obtain information necessary for

11:19:25AM 20 supervision, case monitoring, or treatment. You shall answer

21 the questions posed during the examination subject to your

22 right to challenge in a court of law. The use of such

23 statements is in violation of your fifth amendment rights. In

24 this regard, you shall be deemed not to have waived your fifth

11:19:41AM 25 amendment rights by making such statements. The results of

1  any polygraph pretests or polygraph examinations shall be

2  disclosed to the US Probation Office and to the Court which

3  will not be further disclosed without a court order.  You are

4  required to contribute to the costs of services rendered.

11:19:58AM 5       You are to participate in a mental health treatment

6  program including a mental health evaluation and any treatment

7  recommended.  The probation office will supervise the details

8  of any testing and treatment including the selection of a

9  provider and the selection of and schedule -- excuse me.  If

11:20:15AM 10  impatient treatment is recommended, however, it must be

11  approved by the Court unless you consent.  You are not have

12  any -- you are not to leave such treatment until completion is

13  ordered by the Court.

14       While in treatment or taking any kind of

11:20:30AM 15  psychiatric medication, you shall abstain from the use of

16  alcohol.  You are required to contribute to the cost of

17  services rendered.

18       I'm going to impose a $1,000 fine.  I find that you

19  have the ability to pay such a fine.  Interest on the fine is

11:20:47AM 20  waived while incarcerated.  If you are non-UNICOR or UNICOR

21  Grade 5, you shall pay in installments of 25 per quarter.  If

22  you are assigned grades 1 through 4 in UNICOR, you shall pay

23  in installments of 50 percent of your monthly pay.

24       While in supervision, if that takes place, you can

11:21:00AM 25  make monthly payments at the rate of 10 percent of your

1    monthly grossly income if the fine is not paid.

2           The Court finds that you are indeed indigent and

3    cannot afford to pay the mandatory $5,000 Justice for Victims

4    of Trafficking Act of 2015 assessment.  However, you do have

11:21:17AM 5    to pay the mandatory special assessment of $100 which is due

6    immediately.  If you cannot pay it, then payments shall begin

7    on the Bureau of Prisons Financial Responsibility Program.

8    Payments shall be made to the Clerk of the United States

9    District Court, Attention:  Finance, United States Courthouse,

11:21:40AM 10    2 Niagara Square, Buffalo, New York, 14202.

11           Ms. Rider, the mandatory drug testing requirement,

12    you are recommending that be waived?

13           MS. RIDER:  No, I don't believe I was, your Honor.

14           THE COURT:  I didn't see that.

11:22:07AM 15           MS. RIDER:  You had previously read that.  However,

16    reviewing the report, it looks like there would be no problem

17    if it were waived.  I don't see any recent history of

18    substance abuse.

19           THE COURT:  All right.  The Court then will waive

11:22:28AM 20    the mandatory drug testing pursuant to the 1984 Crime Control

21    Act.  I did indicate that it was imposed.  But again, I just

22    want to make sure that you are in agreement, Ms. Rider, you

23    don't see any history of substance abuse?

24           MS. RIDER:  That's correct, your Honor.  I do not

11:22:51AM 25    see that.

1          THE COURT:  So I will waive that.  One of the

2    things I just want to remind you of, Mr. Burdick, is what we

3    discussed in the plea agreement.  I don't know what will

4    happen in such point as you complete your sentence.  As I

11:23:17AM 5    said, I don't know if you ever will complete the sentence

6    based on your age.  However, if you do, I want to remind you

7    that because of your conviction, there may, in this action, it

8    may result in a civil commitment under Federal Law 18 USC

9    Section 4243.  If it is determined you are a sexually

11:23:42AM10   dangerous person, that would be handled by the Attorney

11   General's Office and that would occur in the judicial district

12   where you are serving your sentence.

13          Counsel, I'm just trying to recollect, pursuant to

14   Rule 32 of the Federal Rules of Criminal Procedure, the

11:26:57AM15   defendant would have the right to appeal the sentence, is that

16   correct, based on the --

17          MS. BURGER:  Yes, it is.  And when the Court has

18   completed its remarks, I have some exceptions to make of

19   potential --

11:27:07AM20          THE COURT:  Certainly.  First of all, pursuant to

21   the plea agreement and specifically pursuant to paragraph 25,

22   the defendant is forfeiting any interest he has in the Samsung

23   Galaxy cellular telephone specified.  This is the sentence of

24   the Court.

11:27:45AM25          And pursuant to Rule 32J of the Federal Rules of

Procedure, I'm informing you, Mr. Burdick, you have the right

to appeal the sentence I have imposed.  If you can't afford

your own lawyer, you are entitled to seek to appeal as a poor

person, but the procedure, at least in this district, is that

11:28:10AM Ms. Burger or someone in her office will handle the appeal for

you.  Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Go ahead, Ms. Burger.

MS. BURGER:  Thank you, Judge.  I would like to

11:28:19AM interpose an objection with respect to the prison portion of

the sentence that was imposed.

As the first point, I would argue that the Court

placed undue emphasis on the guidelines in this case and that

the sentence was driven by that undue emphasis.

Secondly, I would repeat my objection to the

verification testing condition.  I know I argued it earlier.

The argument is that it is an excessive condition.  That some

of the language improperly delegates influenced judicial

authority to the probation department.  And also, that one of

11:28:57AM the items of testing that was proposed, computer voice stress

analysis, is unreliable.

Third, with respect to the computer monitoring

condition, in light of the sentence imposed, I would ask the

Court to consider deferring the details of that condition

11:29:14AM until such time as Mr. Burdick might actually be released on

1 supervised release.  Given the advances of technology, it

2 seems fairly likely, if not very likely, that the contours of

3 whatever program probation has in place for monitoring devices

4 will be very different in 15 to 20 years than it is today.

11:29:37AM 5 And I certainly would object to it being left to whatever the

6 program evolves to within the next 15 to 20 years.

7 With respect to the request that we made in our

8 original sentencing statement, I'd ask the Court to consider

9 recommending that my client be housed as close to the

11:29:56AM 10 Watertown, New York area.  That is where his family is based.

11 That also, it recommends to the Bureau of Prisons that he

12 serve his sentence in a facility with a sex offender

13 management program yard, SOMP yard.

14 THE COURT:  Now, help me out on that.  First of

11:30:13AM 15 all, let me address your concerns.  You have your exception as

16 to the truth verification condition the Court imposed.

17 The Court will recommend, pursuant to your request,

18 that he be housed in a suitable Bureau of Prisons facility as

19 close to Watertown as possible.

11:30:31AM 20 With respect to -- the Court is certainly, as I

21 have suggested and detailed, is certainly mindful of, on sex

22 offender cases, the importance of not applying the guidelines

23 roguery.  The Court did not do that in this case.  The Court,

24 as I indicated and I will tell you to your face, I believe

11:30:50AM 25 this is the appropriate sentence.  I told you, Mr. Burdick, I

1  believe you are a predator.  You took advantage of a child

2  repeatedly, but you have an exception to the Court's ruling in

3  that regard.

4          I'm sorry.  What was the other thing you mentioned?

11:31:07AM 5          MS. BURGER:  The way the computer monitoring

6  conditions --

7          THE COURT:  Yes, I will -- I'm going to leave it

8  in, but I will give you -- when he does get out, if someone

9  from your office is representing him or whatever, I will give

11:31:21AM10  leave to have that condition revisited in light of any changes

11  that occur.  Anything else?

12          MR. ROSSI:  Nothing from me, Judge.

13          THE COURT:  Ms. Rider, anything?

14          MS. RIDER:  Just one thing, your Honor.  Were you

11:31:31AM15  also going to make the recommendation for the SOMP yard.

16          THE COURT:  Yes.  Explain -- that's what I wanted

17  to ask you.  Explain that to me because we don't have Butner

18  anymore where they sent offenders.  So are there certain

19  facilities where these yards are in place?  Is the defendant

11:31:52AM20  eligible for that only after he serves some of his sentence?

21          MS. BURGER:  This is not necessarily tied to an

22  inmate participating in a voluntary sex offender treatment

23  program while within the BOP.  There are a number of different

24  facilities that, I don't know why, but over the years have

11:32:14AM25  come to house larger members of individuals who are convicted

1   of sexual offenses.  The presence of those larger numbers of

2   individuals in those facilities in some instances, from what I

3   have learned anecdotally, can mean that there are additional

4   services available there.  Not strictly speaking regular

11:32:36AM 5   mental health treatment that we might think of, it's something

6   more than what's typically available to the inmate.

7               THE COURT:  What is it called?

8               MS. BURGER:  SOMP, I think it's short for Sex

9   Offender Management Program, and they call it, yard.  In

11:32:49AM 10   addition, this would have the effect of allowing Mr. Burdick

11   to be housed with other individuals who are convicted of

12   similar offenses and would have a bearing, in our view, on

13   safety concerns that he might at another facility.

14               THE COURT:  I will recommend -- and again, I'm

11:33:04AM 15   telling you, Mr. Burdick, the Bureau of Prisons does not have

16   to do anything that I recommend.  Hopefully, they will look at

17   it.  But again, I recommend that, again, you be housed in a

18   suitable Bureau of Prisons facility as close to Rochester as

19   possible and --

11:33:19AM 20               MS. RIDER:  Watertown, Judge.  I'm sorry.

21               THE COURT:  Watertown.  Excuse me.  And again, I

22   don't know which recommendation trumps the other and be housed

23   in a suitable Bureau of Prisons facility that has a sex

24   offender management program.  Now, that may not be close to

11:33:35AM 25   Watertown, Ms. Burger; correct?

1          MS. BURGER:  Yes, that's correct.

2          THE COURT:  So what --

3          MS. BURGER:  I think the BOP will sort that out,

4    Judge.

11:33:45AM 5          THE COURT:  All right.  Very good.  That's the

6    sentence of the Court.  Thank you very much.

7          MR. ROSSI:  Thank you, Judge.

8          (The proceeding concludes at 11:33 a.m.)

9

10                         *    *    *

11

12                    REPORTER CERTIFICATE

13

14       I, Briana L. Jeffords, do hereby certify that I did report

15    in stenotype machine shorthand the proceedings held in the

16    above-entitled matter.

17

18                    *Briana L. Jeffords*
                       BRIANA L. JEFFORDS
19                     Freelance Court Reporter and
                       Notary Public No.  01JE6325111
20                     in and for Genesee County, New York

21

22

23

24

25